MATTER OF LAURENZANO, ET AL.

In Deportation Proceedings

A–19328865, –869
A–19328870, –1, –2

*Decided by Board November 30, 1970*

Notwithstanding respondents, admitted as Argentine nationals for temporary visits, may now be stateless, having executed subsequent to entry declarations of renunciation of Argentine nationality under the United Nations Declaration of Human Rights, Act, and Covenants, their deportation to Argentina may nevertheless be directed under section 243(a) of the Immigration and Natonality Act.

CHARGES:

Order:  Act of 1952—Section 241(a)(9)  [8 U.S.C. 1251(a)(9)]—Nonimmigrant visitor—failed to comply with conditions of admission (Alien (1))

Act of 1952—Section 241(a)(2)  [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer (Aliens (2) to (5))

ON BEHALF OF RESPONDENTS:
Murray H. Rittenberg, Esquire
11 Beacon Street
Boston, Massachusetts 02108

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Respondents appeal from orders of a special inquiry officer ding them deportable respectively on the above-stated charges, nying their applications for voluntary departure, and directing eir deportation to Argentina. The appeals will be dismissed.

All five respondents had hearings before the same special iniry officer at which they were represented by the same attory, who also represents them on these appeals. All five cases esent the same issue on appeal, were argued together before s Board, and can be adequately adjudicated in one opinion.

Respondents are all male natives of Argentina, ranging in age m 22 to 28, who entered the United States as nationals of that intry as temporary visitors for pleasure on various dates in

1970 and were admitted for fixed periods of time. Within the period of his authorized admission, respondent Laurenzano was found gainfully employed, in violation of the conditions of his admission. The others were found here after expiration of their respective periods of admission. Orders to show cause were issued on October 22, 1970.

At their respective deportation hearings, each respondent admitted the truth of the factual allegations contained in his order to show cause and conceded deportability on the charge stated. Our review of the records satisfies us that deportability has been established in each case by evidence which is clear, convincing and unequivocal.

Counsel stated at each hearing that the respondent therein had given up his Argentine nationality. Each respondent applied for the privilege of voluntary departure but conceded that he lacked the funds needed to depart at his own expense. Since they all were thereby ineligible for voluntary departure under 8 CFR 244.1, the special inquiry officer denied their applications. Under the circumstances, that action was proper.

In the presence of counsel, each respondent was asked to state the country to which he wished to be deported. Without objection, each respondent designated Argentina. The orders of deportation before us on appeal direct deportation in each case to Argentina.

At the oral argument, counsel for respondents handed up and asked us to consider five documents under seal, executed respectively by each respondent under oath before a notary public, which purport to constitute renunciations of their allegiance to Argentina and to render them stateless. The documents, while varying in dates of execution,[1] are identical in form. They refer to and invoke "the Universal Declaration of Human Rights and the Covenants on Human Rights, United Nations Treaty Series, No. 5158"; "the final act of the United Nations Conference on the Status of Stateless Persons, done at New York, on 28 September 1954, registered ex officio on 6 June 1960"; "two covenants—the International Covenant on Civil and Political Rights and the International Covenant on Economic, Social and Cultural Rights— which were adopted by the General Assembly on December 16, 1966"; and they specifically invoke and quote the amendments of Article 2 of the Declaration.

On appeal, counsel does not challenge the finding of deportability or the denial of voluntary departure. His primary attack is on

---

[1] Biancardi's and Bravo's are dated October 24, 1970. The three others are dated November 4, 1970.

the deportation orders' designation of Argentina as the country of deportation and he appears to present three alternative arguments.

First, he contends that the Argentine travel documents needed for respondents' deportation to Argentina, requested by the Immigration Service from the Argentine authorities, have not yet been forthcoming and he asks for 60 days to "straighten it out one way or the other." The short answer is that the obtention of travel documents needed to execute a deportation order is the responsibility of Service officers engaged in enforcement functions. It is not within the competence of the special inquiry officer or his Board, whose functions are quasi-judicial. We see no reason to defer action for 60 days.

Second, counsel contends that, as stateless persons, respondents may not be deported to Argentina, the country of their former nationality. Assuming, *arguendo*, that respondents' *ex parte* declarations are sufficient to result in an effective loss of Argentine nationality and consequent statelessness, it by no means follows that they may not be deported to Argentina. The specific terms of the deportation statute require us to reject this argument.

The statutory scheme is relatively simple. Section 241 of the Act defines the deportable classes of aliens, section 242 prescribes the procedures for determining deportability, and section 243 prescribes the manner of executing deportation orders. Section 243(a) gives the deportable alien the first choice. With certain exceptions not here pertinent, it requires deportation "to a country promptly designated by the alien if that country is willing to accept him into its territory." Failing that, deportation is directed to the country of the alien's nationality, if it will accept him. Failing that, deportation may be effected to a number of alternative destinations, including the country from which the alien entered the United States, the country in which he was born, any country in which he had previously resided.

Each respondent specifically selected Argentina as his destination. Section 243(a) does not require generally that the alien be a national of the country he chooses as his destination. Thus, even if we accept as established respondents' loss of Argentine nationality and their consequent statelessness, there is no basis on which we can hold that the special inquiry officer's orders of deportation to Argentina did not comply with the statute.

Counsel asserted at oral argument that the respondents had designated Argentina on his advice and that he had so advised them because the special inquiry officer in other cases had discouraged selection of a country other than that of the alien's nationality or origin. There is nothing in the records before us to support counsel's assertions or to indicate in any way that respondents' designation of Argentina did not represent their real choice. In any event, even if we accept counsel's version and ignore their designations, Argentina would still be the appropriate destination under section 243(a). If respondents are still nationals of that country, Argentina is the destination required by the second step of section 243(a). And if they are stateless, as they claim, Argentina is still a permissible destination under several of the alternatives afforded by the third step, *e.g.,* as the country of their birth.

Counsel's third argument is that, as stateless persons, respondents may not be deported to *any* country.[2] He relies for this proposition on the United Nations Declaration, Act, and Covenants referred to in the instruments of renunciation executed by respondents. We reject this thesis. Quite apart from the fact that United Nations conventions adhered to by the United States are not self-executing and do not of themselves supersede our domestic immigration laws,[3] counsel has pointed to nothing in any treaty, convention or protocol adhered to by the United States which can be construed as in conflict with the specific terms of section 243(a). On counsel's premise, all aliens illegally in the United States could thwart deportation and effectively obtain permanent residence here by the simple expedient of renouncing their foreign nationality and becoming stateless. Bearing in mind the careful system set up by Congress to limit and control immi-

---

[2] (Transcript of oral argument, page 4):

Chairman: Let me ask you this question, because I would like to get to the theory upon which you are here. Is it your view that your clients are now stateless? And is it your view, since they are stateless, the U.S. Government cannot deport them to *any* country?

Attorney: Exactly.

Chairman: In other words it is your view that an alien can come to the U.S. as a temporary visitor and then achieve what amounts to permanent residence by the mere device of executing a renunciation of his foreign nationality and becoming stateless?

Attorney: May I say according to U.S. laws, no, but according to international law a treaty which takes precedence over this government's laws, and signed by the U.S., yes. Absolutely yes.

[3] See *Vlissidis* v. *Anadell,* 262 F.2d 398 (7 Cir., 1959); *Hitai* v. *INS,* 343 F.2d 466 (2 Cir., 1965), cert. denied 382 U.S. 816.

gration, it is clear to us that Congress never contemplated such a result. We cannot construe section 243(a) as having been amended in the manner suggested by counsel, in the absence of more conclusive evidence that this is actually what Congress intended.

**ORDER:** It is ordered that the appeals be and they are hereby dismissed.